Good morning, your honors. Eric Guzman, on behalf of Felipe Velez, the defendant appellant. May it please the court. In this case, at the supervisory lease contested hearing, at least three separate errors occurred. First, the district court erred by imposing a sentence significantly above the high end of the advisory guideline range without adequately explaining the need for justification. Second, the district court erred by not allowing Mr. Velez to exercise the right to a jury finding for the contested allegations. And third, it allowed a modification of Mr. Velez's supervisory lease terms without counsel, without a hearing, by a third-party transmission of a modification form that was sent to Mr. Velez while he was in prison. So can we start on the first question? I mean, you're right that he has to explain it. Why was the explanation not adequate under our prior precedent? Because in MASA, the district court found the defendant to be a danger to the community, and that justified. We said that that justified an upward departure. And here, you have a district court who said he's a threat to society. I mean, outlined the nature and history of the offense, the fact that he violated the supervisory lease conditions, his recidivism, even acknowledged the terrible treatment by the mother. So why is that not enough under MASA? MUSA, sorry. If you look at those cases, obviously there are going to be certain factors the district court has to analyze, different 35, 53, 8 considerations. But the district court needs to grapple with the guideline range sentence, guidelines range, 7 to 13 months, and the sentence imposed and explain why a sentence outside the guideline range is necessary. So while there are going to be factors in aggravation that would support... So you tend to agree that the factors were discussed, but they weren't narrowly tailored to the fact that it went from 13 to, was it 21? 21 months. Yeah. The contention is, well, obviously district courts are going to look at myriad factors when deciding what a proper sentence is. When the court imposes a sentence outside the guideline range, there has to be an additional analysis of, here are the factors we look at. Here's a guideline range, 13 to 21. Why? What is present in this case that takes it outside the guideline range? And why is the guideline range, even the high end of it, inadequate? I understand that there's... Yeah, but the analysis that you see, the narrow tailoring, if you will, analysis, it doesn't seem to be consistent with what we said. We said that there has to be an explanation or justification of why the guideline range is inadequate. So it's insufficient to just focus on, oh, he poses a danger. The district court also has to announce or focus, at least at one point, on the advisory guideline range and say, this is inadequate, this is insufficient, and here's why we have to take the atypical step of imposing a sentence outside, it's relatively far outside the guideline range. If the midpoint of 7 to 13 is 10, 21, that's over double the midpoint of the guideline range of what is so exceptional about this case, that the guideline range that had been calculated by all the research and analysis of the Sentencing Commission, why that is so woefully inadequate to the case at bar, that was not done in this case. If I could of the terms of supervised release, I do not know how it could be considered valid for Mr. Velez to receive that form, request for modification, while he's still in custody, about to leave prison, without being provided to me, his counsel, or... You're talking about the third argument. You're talking about without a hearing, basically. Yes, or at least an opportunity to consult. You're not talking about the jury trial, the Sixth Amendment violation.  But didn't he waive his right? Doesn't this whole thing come down to whether he waived his right to a hearing? Yes, and our position is that the waiver was invalid because... I understand that's your position, but you say you don't understand why this could happen. The way it could happen is if he waives his right. This isn't something where the district court just said, oh, I'm just not going to give you a hearing. He looked at the waiver, he said, you've waived it, I don't need to. And you're saying that was wrong analysis. So why was it wrong to say that it was waived, that the defendant had waived his right? Because the waiver was presented to him. Someone in probation is aware as an individual with significantly diminished mental capacity in a custodial setting, he's in prison, it was not presented to me, which is... You didn't know about the waiver. Correct. Until much later, until after he'd been filed by ECF. It was presented to him before he'd even commenced supervised release while he was still in the custody of Bureau of Prisons. So to, I think it was invalid to allow an uncounseled waiver by the defendant. Do we have any case law? I mean, you don't disagree that he signed it. You're just saying he didn't have the mental capacity to sign it? Or you're saying he was coerced? Well, I think there's some elements of coercion whenever it's presented to someone in prison. But I don't, what's our case law that says that a waiver signed by a defendant is invalid if the counsel doesn't review it? Well, I don't know if there's a case law, I'm not aware of a case law on that direct point, but traditionally, if he's on supervised release, that modification is presented to his lawyer first. And I would have been, received a copy, and I would have consulted with him and properly said, you shouldn't have signed this, or you shouldn't have waived this, or maybe you will, but let's think this through. It was just given to him through a prison guard, which I think cuts against it being valid, knowing, or voluntary. I mean, the idea that a, the probation officer didn't even present it to him directly. The idea that the prison guard is going to adequately explain it or give him enough information such that it's a knowing or intelligent waiver of his right to a hearing is not supported by the record. If there are no further questions, I'd like to reserve the rest of my time for rebuttal. Thank you. Good morning. May it please the Court. Annie Shea for the United States. This Court should affirm for three reasons. First, the district court's revocation of Mr. Velez's Argle III rights to a jury trial. Second, the district court did not plainly err in imposing an above guidelines revocation sentence, nor did it plainly err in modifying Mr. Velez's supervised release condition without a hearing because Mr. Velez knowingly and voluntarily waived the rights. Well, on the last one, does the Christensen case suggest that there needs to be a little bit more inquiry rather than just a reliance on the writing when there is information in the record about mental issues? Your Honor, I think based off this record, I would push back against the characterization that there was very much in the record that indicated further inquiry was required here. This was his third time before this judge. Mr. Velez was quite experienced in the federal criminal system. Does Zahra have any information about mental issues or mental problems for this defendant? Yes, there are some mental issues, Your Honor. Christensen suggests that when there's that kind of an issue that just getting a sign writing may not be enough and there needs to be a little bit more of an inquiry? Your Honor, yes. So if there is enough for the district court to think of some sort of special disadvantage or disability, then the district court cannot rely on this presumption of validity and should make more of an inquiry. I would say with this particular record here, though, there were really no competency issues or any issues raised as far as Velez's ability to waive his rights. He had waived his rights previously. He had pled guilty in prior cases. The court had seen this. The court had several colloquies with Mr. Velez in the past and understood that, at least from the record that the district court had, that Mr. Velez was capable of waiving modification. I'd also point out that this particular modification, the context of it, was that, again, it happened in the process of trying to find Mr. Velez's housing for his release after prison. And part of the problem was Mr. Velez's plan was to live at his father's house, where his niece, who was a victim of Mr. Velez's prior conduct, was. And so he was not eligible under BOP programs to be put in the RRC. So the probation officer basically figured out, well, if I can get a court order to put him in the RRC, I can at least find some temporary housing plan. The condition that was actually modified, that modification simply said to be placed in the RRC for a period of up to 180 days with the discretion of the probation officer. So it was essentially a temporary plan to find him housing. Even though it's not technically a favorable condition, I would say that the Rule 32 says there's two ways in which you cannot have a hearing for a modification. One is a waiver, which occurred here. But the second one is about a favorable modification. And this, again, was a modification that inured to Mr. Velez's benefit in some ways. I would say with regard to the imposition of the above guidelines for a vacation sentence, just very briefly, I think, Judge Nelson, you did point out that Moussa, I think, is controlling here. And Moussa, the judge there, again, not a model of clarity is what this court said, but he made the statement that Mr. Moussa was in danger. Do you remember how far was the departure, the upward departure in Moussa? Because one of the arguments here seems to be, look, this is, I mean, almost double, or at least from 13 to 21 months above. I mean, there is something to this idea. I mean, what if it had been 100 months? I mean, I don't think you can just say, well, he's a threat to society, so then you get free reign to do whatever you want. So I guess I'm just trying to figure out, it's pretty lenient, but there must be some connection between what you find and how far the upward departure can be. Yes, Judge Nelson, I would agree with that, but I think that's a different problem. That's a substantive reasonableness problem of the sentence. I think what's being raised here is a procedural error. And you're saying they haven't made that second argument, even though he's sort of tied that in here, they haven't actually said. That's not how I read Mr. Velez's brief. And, again, I want to point out that this was not raised below. Again, we're on plain error view for this particular claim as well as the modification claim. Neither of these claims were preserved. And so the district court could have fixed it, could have tried to give more of a reason on the record if it had been raised then. But here we are trying to figure out, did a procedural error occur? Did he actually meet 3553C2, which here under Moussa would be sufficient? Lastly, I wanted to turn to the final claim that Mr. Velez raises, which is the jury trial right claim. I want to say that this particular claim is squarely foreclosed by this Court's precedent, both the Sixth Amendment claim, which is foreclosed. And that's Bowers and Henderson, right? Yes, Your Honor. The Article III claim is foreclosed by Bowers, and the Sixth Amendment claim was foreclosed by a long line of cases in this Court and the Supreme Court and other circuits, both before and after Haymond. And if there are no further questions on that point, the government respectfully asks this Court affirm. Thank you. We have time for rebuttal. Thank you. Just one final point, Your Honor. In following up on what Judge Collins inquired regarding evidence in the PSR of Mr. Velez's diminished capacity, in page 2 of my reply brief, I cite the sections of the PSR where there's detailed description of the significant brain impairment he suffered. It also detailed his diminished cognitive ability and evidence that, under testing, his IQ scored in the level of people that have been categorized with mild mental retardation, and that was in the PSR and that was in the possession of probation and the district court, which I think would support the need for additional inquiry when this individual is signing that waiver without the advice of counsel. And in response to the government's argument that Mr. Velez is familiar with the federal system and he's pleaded guilty to charges before, that was always with the advice of counsel, and often after rounds of negotiation and steps that were taken to his benefit and offered him at least some level of protection and guidance. And lastly, I would not characterize the imposition of residing in a halfway house as a favorable modification. That is often imposed as a castigation or a punishment. It is a restriction on liberty. So for those reasons, I'd ask the court to reject that argument, and we'd ask the court to reverse the judgment and remand for further proceedings. Thank you. Thank you to counsel for your arguments in the case. The case is now submitted.
judges: NELSON, COLLINS, VANDYKE